NATIVE AMERICAN ARTS, INC., Plaintiff,

v.

J.C. PENNEY COMPANY, INC., Defendant.

No. 97 C 6803.

United States District Court, N.D. Illinois, Eastern Division.

May 27, 1998.

<... >
</...>

Michael Patrick Mullen, Mullen & Foster, Chicago, IL, for Plaintiff.

James Michael Hofert, Michael John Leech, Scott Frederick Burns, Bruce L. Carmen, Hinshaw & Culbertson, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Plaintiff NAA is an Indian arts and crafts organization that sells authentic Indian-made products. Last year, it brought suit against retailer J.C. Penney ("Penney's"), alleging that Penney's sale of similar, but non-authentic, Indian products violated the Indian Arts and Crafts Act of 1990 ("IACA" or "the Act").[1] The Act prohibits "offer[ing] or display[ing] for sale or sell[ing] a good ... in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization ...." 25 U.S.C. § 305e(a) (1994). Since 1990, NAA claims, several Penney's stores in Illinois have sold imitation Indian arts and crafts that the stores misrepresent as genuine Indian-made products, including Indian-style baskets, feather earrings, necklaces, pendants, and statues. One Penney's store allegedly sells these products in the very same mall where NAA sells its authentic goods.

This conduct provides the basis for NAA's three-count complaint. Count I contains the IACA claim, and Counts II and III are state-law claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Uniform Deceptive Trade Practices Act.

Penney's filed a motion to dismiss the entire complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). It argued that NAA lacks standing to sue under the IACA, that the IACA is, in any event, unconstitutional, and that the two state-law counts suffer from various pleading deficiencies. We determined that, before evaluating any of NAA's claims, we first had to address NAA's standing to sue under the IACA—since a negative answer would dispose of the only count sup-

---

1. In this opinion, the Court uses the nomenclature "Indian" instead of "Native American" in accordance with the usage employed by both parties and the relevant statute.

porting our jurisdiction. Therefore, we denied Penney's motion to dismiss Counts II and III without prejudice, denied without prejudice Penney's constitutional challenge to the IACA, and ordered the parties to brief the issue of NAA's standing to sue under the Act.

Thus, the sole issue before this Court whether NAA has standing to sue under the IACA. After careful consideration, we find that it does not. We therefore dismiss Count I with prejudice. We decline to exercise supplemental jurisdiction over the state law claims in Counts II and III, and dismiss them without prejudice to NAA's ability to refile them in state court.

## LEGAL STANDARDS

■■■ A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989). The court must view all facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to the plaintiff. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996); *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts warranting relief. *Triad Assocs.*, 892 F.2d at 586. With these standards in mind, we consider the legal sufficiency of NAA's allegations in support of its standing to sue.

## ANALYSIS

### I  The Parties' Arguments

Penney's asserts both constitutional and statutory impediments to NAA's standing. First, it contends that NAA has no standing to sue under Article III of the Constitution because it has not sufficiently alleged an "injury in fact." Second, it argues that the IACA's statutory language makes clear that an Indian arts and crafts organization such as NAA[2] cannot sue in its own right, but rather must be the beneficiary of a representative action. As such, Penney's contends, Count I must be dismissed for both lack of subject matter jurisdiction and failure to state a claim.

NAA responds that it has adequately alleged "injury in fact" in the form of lost revenue and business opportunities when consumers purchased Penney's imitation products instead of NAA's genuine arts and crafts. Second, it asserts that the IACA's statutory language gives it a right to sue on its own behalf, and that the legislative history evinces the same intent. In the alternative, NAA argues that it has an implied right of action to sue under the IACA. NAA thus contends that Count I should remain in the complaint with NAA as plaintiff.[3] We consider these arguments in turn.

### II  Injury in Fact

■■■ Because Penney's constitutional challenge to NAA's standing directly attacks our subject matter jurisdiction over this suit, it is a threshold issue that we must consider before any of the other arguments. Standing to sue is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citation omitted). To establish Article III standing, NAA must show: (1) that it has suffered an "injury in fact"—a harm that is (a) "concrete and particularized,"[4] and (b) "actual or imminent, not conjectural or hypothetical"; (2) that this injury is "fairly traceable" to Penney's alleged conduct; and (3) that a favorable judicial deci-

---

2. It is not contested at this stage that NAA is an Indian arts and crafts organization as defined under the statute. Def.'s Reply at 2 n.1; *see* 25 U.S.C. § 305e(d)(4) ("the term 'Indian arts and crafts organization' means any legally established arts and crafts marketing organization composed of members of Indian tribes.").

3. NAA requests leave to add a new plaintiff should the Court rule that NAA lacks standing.

As we shall explain, however, NAA waived in open court its right to amend the complaint to add a new plaintiff.

4. *Lujan* explained that a "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." 504 U.S. at 560 n. 1, 112 S.Ct. 2130.

sion would likely redress the injury. *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997) (citing *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130). These are the "core components" of standing, on which the plaintiff bears the burden of proof. *Steel Co. v. Citizens for a Better Environment,* ─── U.S. ───, 118 S.Ct. 1003, 1017, 140 L.Ed.2d 210 (1998) (citation omitted).

Penney's argues that NAA fails the "injury in fact" prong. It points out that while the complaint alleges Penney's violated the IACA by misrepresenting imitation Indian products as authentic, and that the NAA sells authentic products, the complaint never explains how Penney's conduct harmed the NAA in an individual and personal way. It is true that NAA's complaint is somewhat vague. NAA asserts that it is an "Indian arts and crafts organization" (as defined by the IACA) that distributes authentic Indian arts and crafts; then it cites numerous instances in which Penney's stores allegedly violated the statute by selling imitation products misrepresented as genuine. We are left to infer exactly how NAA was injured by Penney's actions—for example, did Penney's imitate NAA's goods or usurp NAA's profits by selling similar products?

■ Nevertheless, the standard under which we evaluate the sufficiency of standing allegations at this stage is lenient. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations of injury embrace those specific facts that are necessary to support the claim." *Bennett,* 117 S.Ct. at 1164 (quoting *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130) (internal quotations omitted). In addition, the court may consider facts contained in NAA's memorandum in opposition to the motion to dismiss as long as they are consistent with the allegations in the complaint. *See, e.g., Dausch v. Rykse,* 52 F.3d 1425, 1428 n. 3 (7th Cir.1994); *Hrubec v.*

*National R.R. Passenger Corp.,* 981 F.2d 962, 963–64 (7th Cir.1992). Under these liberal pleading standards, NAA satisfies the injury-in-fact requirement.

NAA's brief explains that NAA was injured in two ways that are consistent with the complaint's more general allegations. Although the first alleged injury is questionable, the second clearly establishes an injury in fact. First, NAA claims that as part of a "comprehensive investigation conducted for over more than a year," it went to 18 different Penney's stores and purchased 35 offending products. Pl.'s Response at 15–16. It is hard to see how this injured NAA, which must have believed that Penney's products were not authentic if it was investigating possible violations of the IACA. Consequently, any claim that Penney's misrepresentations tricked or defrauded NAA into buying imitation products (which would have been a concrete, actual injury) rings hollow.

We need not pass on the authenticity of this injury, however, because NAA alleges a more substantial injury that it has already suffered in a particularized and concrete way: lost revenue and business opportunities as Penneys' direct retail competitor. NAA claims that "the effect of this flood of imitation Indian products by defendant is to undercut the authentic Indian product market and [NAA's] sale and profits and business opportunities in several injurious ways." *Id.* at 16. NAA pledges to prove that "it is a direct retail competitor of Defendant, selling similar authentic products .... Indeed, it sold authentic Indian products down the hall in the same retail shopping mall wherein Defendant sold its imitation counterfeit products." *Id.* at 18. These general allegations are sufficient to encompass more specific claims about exactly how and to what extent Penney's sales undermined NAA's profits. Thus, the injuries NAA outlines in its brief are sufficiently concrete, particularized, and actual to meet the injury-in-fact prong.[5]

---

5.   Penney's cites *Doe v. County of Montgomery,* 41 F.3d 1156 (7th Cir.1994), in support of its injury-in-fact argument. But the case is readily distinguished. The losing plaintiff was an attorney who brought suit against the county under the Establishment Clause, challenging a sign at a Montgomery County courthouse that read, "The

World Needs God." The court noted that the Chicago-based attorney had never been to the courthouse, had never refused to represent a client because of the sign, and had no pending cases that would require him to enter the courthouse. *Id.* at 1161. Since he was never exposed to the sign and could not show any likelihood of

In addition, NAA has met the remaining requirements of causation and redressability. NAA alleges that it was Penneys' conduct in selling imitation Indian-style goods that caused NAA to lose sales and business opportunities. As such, NAA's injury is fairly traceable to Penney's offending conduct, "not the result of the independent action of some third party not before the court." *Bennett*, 117 S.Ct. at 1163. As for redressability, the complaint plainly ·sets forth the relief requested—compensatory and punitive damages and injunctive relief—all of which the statute authorizes as relief to be paid to an aggrieved Indian arts and crafts organization such as NAA. *See* 25 U.S.C. § 305e(a)-(b) (providing for injunctive or equitable relief and assessment of damages and punitive damages against defendants who violate the Act); *id.* § 305e(c)(1)(B)(2) ("Any amount recovered pursuant to this section shall be paid to the individual Indian, Indian tribe, or Indian arts and crafts organization . . . ."). Because NAA has sufficiently plead all three constitutional standing requirements,[6] we have subject matter jurisdiction to address Penneys' argument that the IACA's statutory language prevents NAA from suing in its own right.

### III  Statutory Language

■ Even when a plaintiff has established Article III standing, Congress may nonetheless exclude it from the class of persons who may sue under a particular statute. To determine whether Congress intended to permit Indian arts and crafts organizations to sue directly under the IACA, we start with

future exposure, the attorney failed to show an actual and imminent injury. *Id.* By contrast, the court held that the other plaintiffs had established an imminent injury because they lived in the county and had reasons to enter the courthouse (such as jury duty). *Id.* at 1159–61. In this case, NAA has established an actual injury— lost profits—that has already occurred. The likelihood of future injury, which was at issue in *Montgomery County*, is irrelevant.

Penney's citation to *Indemnified Capital Investments, S.A. v. R.J. O'Brien & Assoc.*, 12 F.3d 1406 (7th Cir.1993), is equally unavailing because the plaintiff in that case was an investment company that brought a commodity fraud suit in order to recover losses incurred by its customers, who had traded independently with the defendants.

its language. *See Reves v. Ernst & Young*, 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) ("In determining the scope of a statute, we look first to its language."); *United States v. Ranum*, 96 F.3d 1020, 1029 (7th Cir.1996) (same), *cert. denied*, —— U.S. ——, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997); *Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir.1996) (same) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Reves*, 507 U.S. at 177, 113 S.Ct. 1163 (citations and internal quotations omitted). A court should look to the legislative history only as a final option if the statutory language is "undeniably ambiguous." *Newsom v. Friedman*, 76 F.3d 813, 816 (7th Cir.1996).

■ The availability of direct versus representative actions under the IACA presents a question of first impression. Indeed, since the Act was passed in 1990 it has garnered no interpretive judicial decisions. As such, we conduct an independent review of the statute and determine its meaning using well-settled principles of statutory interpretation.

Section 305e(c) is the IACA's suit provision. It sets out in explicit terms who may sue under the Act:

(c) Persons who may initiate civil actions (1) A civil action under subsection (a)[7] of this section may be commenced——

Not only did the company fail to establish any kind of injury, the court found that the company actually benefitted from its customers' losses because it received commissions from the fraudulent trades. *Id.* at 1410.

6. In addition to the constitutional requisites for standing, federal courts "also adhere[ ] to a set of prudential principles that bear on the question of standing." *Bennett*, 117 S.Ct. at 1161. These principles, directed toward ensuring that the federal judiciary maintains its limited role in this democracy, are not at issue in this case.

7. Subsection (a) is the Act's substantive provision, which explains the conduct that it prohibits:

(A) by the Attorney General of the United States upon request of the Secretary of the Interior on behalf of an Indian who is a member of an Indian tribe or on behalf of an Indian tribe or Indian arts and crafts organization; or

(B) by an Indian tribe on behalf of itself, an Indian who is a member of the tribe, or on behalf of an Indian arts and crafts organization.

(2) Any amount recovered pursuant to this section shall be paid to the individual Indian, Indian tribe, or Indian arts and crafts organization . . . .

The parties quarrel primarily about the meaning of subsection (B) and its relationship to subsection (A), specifically, whether those provisions permit an Indian arts and crafts organization to bring its own action, or relegate the organization to being the beneficiary of a representative action. Penney's argues that these two sections "authorize[ ] only two classes of plaintiffs: the Attorney General and Indian tribes." Def.'s Br. at 2. It points out that subsections (A) and (B) begin by designating those who may bring suit: an action "may be commenced (A) by the Attorney General . . . or (B) by an Indian tribe . . . ." Then, Penney's explains, the statute lists the persons whom the Attorney General or an Indian tribe may sue "on behalf of": a tribe, an individual Indian, or an Indian arts and crafts organization. Given this structure, Penney's contends that using the phrase "on behalf of" instead of "by" in front of "an Indian arts and crafts organization" means that Congress intended to exclude such organizations from the class of persons permitted to initiate a lawsuit.

NAA, in contrast, argues that the Court should read the statute as follows: "(1) a civil action . . . may be commenced . . . (B) . . . on behalf of an Indian arts and crafts organization." From the lack of a subject directly before "on behalf of," NAA asks the Court to infer that Indian arts and crafts organiza-

tions may sue on behalf of themselves. NAA employs the following logic to reach this conclusion. The second comma in subsection (B), followed directly by "or," sets up two independent clauses. Broken down in this manner, subsection (B) authorizes an action either "(1) by an Indian tribe on behalf of itself, [or on behalf of] an Indian who is a member of the tribe, or (2) [by an Indian arts and crafts organization] on behalf of an Indian arts and crafts organization."

In addition to advancing this grammatical argument based on subsection (c)(1)(B), NAA seizes on the statute's direction in subsection (c)(2) that "any amount recovered pursuant to this section shall be paid to the . . . Indian arts and crafts organization." Because Congress mandates financial compensation to injured Indian arts and crafts organizations, NAA maintains, it must have meant to allow such organizations to bring suit to obtain this redress.

Although subsection (c)(1)(B) is arguably poorly worded, the statute is not ambiguous. We hold that it clearly prevents Indian arts and crafts organizations from suing in their own right and requires them to obtain relief through representatives.

Our conclusion is grounded in Congress' insertion of the phrase "on behalf of" directly in front of "Indian arts and crafts organization." There is no reason to include the "on behalf of" language if such organizations could sue on their own. All Congress had to do is use the word "by" if it wanted to grant Indian arts and crafts organizations their own right of action. Indeed, that is exactly the route Congress took with Indian tribes in stating that an action may be commenced "by an Indian tribe on behalf of itself"—a convention it could easily have used when referring to Indian arts and crafts organizations later on in the sentence. But Congress chose not to do so. *Cf. United States v. Hayward*, 6 F.3d 1241, 1246 (7th Cir.1993)

A person specified in subsection (c) of this section may, in a civil action in a court of competent jurisdiction, bring an action against a person who offers or displays for sale or sells a good, with or without a government trademark, in a manner that falsely suggests it is Indian produced, an Indian product, or the

product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States, to—
(1) obtain injunctive or other equitable relief; and
(2) [damages]
25 U.S.C. § 305e(a).

(refusing to insert statutory language that Congress "could have easily inserted" but "chose not to do so"). Instead, the phrase "by an Indian tribe" in subsection (B) makes an Indian tribe the common subject that may sue "on behalf of" the listed parties, including an Indian arts and crafts organization.

Our holding is further bolstered by the fact that NAA's contrary interpretation is untenable—it requires that we either read words into the statute or ignore portions of the current text. NAA cites no principled reason for reading subsection (B) as two independent clauses with itself as both subject and object in the second clause. This would force us to read the phrase "by an Indian arts and crafts organization" into subsection (B) or to create a free-standing subsection (C) with the same language.[8] We decline this invitation to engage in judicial legislation. See Hinkle v. Henderson, 85 F.3d 298, 304 (7th Cir.1996) ("[C]ourts should not insert words into legislative enactments when the statute otherwise presents a cogent and justifiable legislative scheme.") (internal quotations and citations omitted).

The only other alternative under NAA's construction is to read the "on behalf of" language right out of the statute. The resulting section would read that suit "may be commenced ... by an Indian tribe on behalf of itself, an Indian who is a member of the tribe, or an Indian arts and crafts organization," raising an arguable point that the phrase "may be commenced by" modifies all three listed parties. But given that the words "on behalf of" directly precede "Indian arts and crafts organization," the only logical interpretation is to read "Indian tribe" as the subject that may "commence" an "action" "on behalf of an Indian arts and crafts organization." This interpretation takes into account the full statutory text, rather reading the last phrase out of context. See Sundstrand Corp. v. Commissioner of Internal Revenue, 17 F.3d 965, 967 (7th Cir.1994) ("[T]aking a

word, a phrase, or a sentence out of context is as great a sin in statutory interpretation as it is in ordinary argument.").

NAA's construction also ignores subsection (B)'s punctuation. The provision has two commas, not one, and lists three separate parties who may be beneficiaries of a representative action. To view the first part of subsection (B) as an independent clause would disregard the first comma. But punctuation is significant to our interpretive task. See United States v. Ron Pair Enterprises, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (comma placement aided in determining statute's plain meaning). Moreover, making "on behalf of an Indian arts and crafts organization" its own independent clause would make the first "clause" incomprehensible: an action "may be commenced ... (1) by an Indian tribe on behalf of itself, an Indian who is a member of the tribe."

Finally, NAA's reading is at odds with the general structure of the IACA's entire suit provision. Section 305e(c)(1) is separated into two subsections, (A) and (B), each of which specifies a different representative party—the Attorney General and a tribe. The parties do not dispute that (A) permits the Attorney General to sue as a representative of an Indian, a tribe, or an Indian arts and crafts organization. Subsection (B) closely tracks subsection (A): both delineate by whom an action may be commenced on behalf of others. Again, if Congress wanted to allow yet a third party to commence an action, it could easily have created a subsection "(C) by an Indian arts and crafts organization." That Congress did not choose such an easy and clear approach to provide for suits by Indian arts and crafts organizations on their own behalf suggests strongly that it did not intend to permit arts and crafts organizations to bring suit directly. See Trustees of the Chicago Truck Drivers, 76 F.3d at 829 n. 7 (noting that Congress could

**8.** Indeed, NAA gives us no reason to think that, in viewing "on behalf of an Indian arts and crafts organization" as an independent clause, a court would have to limit the subject representative to Indian arts and crafts organizations. If the statute is read as NAA would have it—an "action may be commenced ... on behalf of an Indian arts and crafts organization"—then the absence of an explicit subject would permit anyone to sue on behalf of the organization. This result is absurd—it would allow persons with no injury or interest in enforcing the statute to become representative plaintiffs.

easily have rearranged the structure of the statute to create a different reading, but did not).

The only case NAA cites in favor of its independent clause interpretation, *United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), is easily distinguished because it construed a statute with an entirely different grammatical structure. *Ron Pair* was a bankruptcy case in which the United States sought post-petition interest on its oversecured tax lien based on the following provision: "[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." *Id.* at 241, 109 S.Ct. 1026 (citing 11 U.S.C. § 506(b)). The Court held that the commas surrounding "interest on such claim" set it off as an independent clause from "and any reasonable fees, costs, or charges provided for under the agreement." *Id.* As such, the Court held that the United States had an "unqualified" right to the interest, but could recover fees, costs or charges only if they were reasonable and authorized by an agreement. *Id.*

NAA argues that subsection (c)(1)(B) similarly sets off the phrase "on behalf of an Indian arts and crafts organization" by a comma, rendering it an independent clause. But the commas in (B) serve a fundamentally different purpose—they set out a list of three things in series, the last of which is an Indian arts and crafts organization. In contrast, "interest on such claim" is surrounded by commas and followed by the words "and any"; together, the punctuation and conjunctive words make "interest on a claim" stand independently from the list that follows. *See* 489 U.S. at 241, 109 S.Ct. 1026. NAA's interpretation would be akin to dividing "and any reasonable fees, costs, or charges provided for under the agreement" into two inde-pendent clauses instead of a list of three things that must be reasonable and authorized by an agreement—a patently absurd construction.

We likewise reject NAA's interpretation of subsection (c)(2). Its command that amounts recovered go directly to the injured Indian arts and crafts organization supports NAA's status as the beneficiary of a representative action, not its ability to bring suit directly. There would be no need for Congress to direct that injured arts and crafts organizations must receive the proceeds of suit if such organizations could always sue in their own right. Moreover, subsections (c)(2)(A)-(B) permit attorneys' fees and the costs of suit to be deducted from these proceeds, indicating that the person receiving the proceeds of suit (the injured Indian arts and crafts organization) is different than the person who brings the suit.[9]

In sum, the statutory language in section 305e(c) is clear and permits only one interpretation—that an Indian arts and crafts organization may recover under the IACA only as the beneficiary of a representative action brought by the Attorney General or a tribe. Our finding that the statutory language is unambiguous and its meaning clear effectively concludes the matter. But in light of the fact that this is a question of first impression, we take the time to demonstrate that the legislative history fully supports our reading of the statute.

## IV Legislative History

Because NAA argues that the IACA's suit provision is ambiguous, it delves into the Act's legislative history, citing bits and pieces that allegedly show Congress' intent to grant Indian arts and crafts organizations a direct right of action. In addition, NAA argues that the policy goals of the statute would be

---

9. The text of (c)(2) reads:

(2) Any amount recovered pursuant to this section shall be paid to the individual Indian, Indian tribe, or Indian arts and crafts organization, except that—

(A) in the case of paragraph [c](1)(A), the Attorney General may deduct from the amount recovered the amount for the costs of suit and reasonable attorney's fees award-ed pursuant to subsection (b) of this section . . . and

(B) in the case of paragraph [c](1)(B), the amount recovered for the costs of suit and reasonable attorney's fees pursuant to subsection (b) of this section may be deducted from the total amount awarded under subsection (a)(2) of this section.

furthered by permitting it to bring suit. Although we address these arguments, we reiterate that our interpretation of the IACA's suit provision is grounded in statutory language, not legislative history. *See Benion v. Bank One,* 144 F.3d 1056, 1059 (7th Cir.1998) ("Substituting legislative history for legislation has become a disfavored method of statutory interpretation, in recognition of the fact that Congress enacts and the President signs statutes rather than committee reports.") (citations omitted). In any event, neither NAA's cited history nor its policy arguments are persuasive.

The IACA was approved by the House and Senate on October 27, 1990, and signed into law on November 29, 1990.[10] NAA's proposed reading of the statute is based in large part on the Senate's October 25, 1990 section-by-section analysis of the bill (read into the *Congressional Record).* The analysis states that, under section (c)(1)(B), an action may be commenced "by an Indian tribe on behalf of itself or a tribal member, or on behalf of an Indian arts and crafts organization." 136 CONG. REC. S18249 (Oct. 25, 1990) (statement of Sen. Exon). Because the analysis splits subsection (B) into two parts—Indian tribes and individual Indians in the first clause and Indian arts and crafts organizations in the second—NAA contends that the Senate "recognized and considered an arts and crafts organization as separate from a tribe and a member thereof in describing who could bring suit." Pl.'s Resp. at 8. That separation is relevant, according to NAA, because the first clause connects an individual Indian to the Indian tribe bringing suit, while the second clause makes no such connection for Indian arts and crafts organizations.

But this passage, like the enacted language, still inserts the critical "on behalf of" language right in front of "Indian arts and crafts organizations." The .analysis's omission of the first comma between Indian tribes and individual Indians has no effect on this language. NAA simply cannot escape the fact that the words "on behalf of" clearly connote beneficiary status.

Perhaps NAA's best legislative history argument is based on the Senate's analysis of the IACA's substantive provision in section 305e(a). The analysis·explains that "Subsection (a) ... adds new civil penalties for misrepresentation that *may be sought by* a tribe, Indian or Indian arts and crafts organization *to obtain* injunctive relief or other equitable relief and damages including treble damages." *Id.* (emphasis added). While this passage could be read as supporting the NAA's direct action argument, the words "civil penalties ... may be sought by ... Indian arts and crafts organization[s] ... to obtain ... relief" could also mean that arts and crafts organizations may seek these penalties and obtain relief *through* a representative. In light of the "by an Indian tribe... on behalf of an Indian arts and crafts organization" language ultimately enacted in (c)(1)(B), as well as subsection (c)(2)'s direction that injured Indian arts and crafts organizations receive the proceeds of any suit—deducted for attorney's fees and the costs of suit—it is more reasonable to imbue this language with the latter meaning. We also point out that the Senate's unilateral analysis of the IACA prior to enactment is far less persuasive than the language enacted by the entire Congress and signed into law by the President.

NAA next argues that House Report 101–400(II) (Sept. 21, 1990) bolsters its position that Indian arts and crafts organizations may sue because the report distinguishes "Indian groups" from "Indian tribes" and explicitly permits "Indian groups" to sue directly under the IACA. Indian "groups," according to NAA, is a broad term that encompasses Indian arts and crafts organizations. The relevant language in the report, which was issued over a month before the bill took its final form, reads:

> Subsection (c)(1) establishes that a civil action may be commenced under subsection (a) in the following situations: (2) by an Indian tribe or group on behalf of its members .... H.R.Rep. No. 101–400(II) at 7–8, *reprinted in* 1990 U.S.C.C.A.N. 6395.

---

10. Pub.L. 101–644, Title I, § 105, 104 Stat. 4664 (Nov. 29, 1990).

A careful reading of the report shows that the word "groups" is not a general term that could be interpreted broadly to embrace Indian arts and crafts organizations, but rather has a precise and narrow definition that does not include such organizations. A few pages before the analysis, the report sets out the bill's actual language, which defines "Indian group" as a subset of "Indian tribe":

> (3) the term "Indian tribe" means (A) any Indian tribe, band, nation, Alaska Native village, or other organized group or community which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians; or (B) any Indian group that has been formally recognized as an Indian tribe by a State legislature or by a State commission or similar organization legislatively vested with State tribal recognition authority . . . .

The report later explains this language changed an earlier version of the bill in order to include these state-recognized Indian "groups" within the definition of "tribe." H.R. Rep. 101–400(II) at 7–8, 1990 U.S.C.C.A.N. 6395. When Congress passed the IACA, it codified this definition:

> (3) the term "Indian tribe" means
>
> (A) any Indian tribe, band, nation, Alaska Native village, or other organized *group* or community which is recognized as eligible for the special programs and services provided by the United States . . .; or
>
> (B) any Indian *group* that has been formally recognized as an Indian tribe by a State legislature or by a State commission or similar organization . . . (emphasis added). 25 U.S.C. § 305e(d)(3).[11]

Conversely, both the legislative history and the enacted IACA define Indian arts and crafts organizations separately from Indian tribes in the next subsection. The House Report version reads: "(4) the term 'tribal

organization' means any legally established arts and crafts marketing organization composed of members of Indian tribes"; while the final version states: "(4) the term 'Indian arts and crafts organization' means any legally established arts and crafts marketing organization composed of members of Indian tribes." Nowhere in either the legislative history or the enacted IACA does Congress use the words "Indian group" interchangeably with "Indian arts and crafts organization" or "tribal organization." As such, both the Act and the legislative history defeat NAA's attempt to fit Indian arts and crafts organizations within Indian "groups."

In short, the legislative history that NAA cites does not support its position that the organization may sue. Other parts of the Act's legislative history, however, demonstrate that Congress did not intend for groups such as NAA to bring suit directly. In particular, statements in the *Congressional Record* by Representatives Kastenmeier and Faleomavaega during the House's September 27, 1990 consideration of H.R.2006 (which, with minor changes, was enacted one month later as the Indian Arts and Crafts Act of 1990), shed light on Congressional intent.

The bill introduced on September 27 is different from the enacted version in just two respects. First, the September 27th version used the terminology "tribal organization" rather than "Indian arts and crafts organization." But this version of the bill and the Act define these terms identically. *Compare* 136 CONG. REC. H8291–01 (Sept. 27, 1990) (statement of Rep. Faleomavaega) *with* 25 U.S.C. § 305e(d)(4). Second, the September 27th version of the section authorizing civil actions included three subsections rather than two. The third subsection permitted suit "(C) by any person aggrieved by any such offer, display, or sale." [12] 136 CONG. REC.

---

11. The suit provision in the enacted IACA drops the reference to "Indian groups" as a separate entity and simply uses "Indian tribes"—consistent with the above provision including "Indian groups" within the definition of "Indian tribe."

12. Section 6(c)(1) of the September 27th version read:

> A civil action under subsection (a) may be commenced-
> (A) by the Attorney General of the United States upon request of the Secretary of the Interior on behalf of an Indian who is a member of an Indian tribe or on behalf of an Indian tribe or tribal organization;

H8291. This cause of action for aggrieved individuals was later eliminated.

In describing the September 27th version, Representative Kastenmeier stated that the Act provides "a civil action enforceable by the Attorney General or the aggrieved artisan or his tribe ...." 136 CONG. REC. H8293. Given that subsection (c)(1)(B)'s "by an Indian tribe ... on behalf of a tribal [arts and crafts] organization" language mirrors the enacted language, his statement excluding arts and crafts organizations from the list of those who may bring suit indicates that he did not consider Indian arts and crafts organizations to be proper plaintiffs. The "aggrieved artisan" to which Kastenmeier refers is the "any person aggrieved" permitted to sue under the ill-fated subsection (C), not an arts and crafts organization.

Representative Faleomavaega confirmed this interpretation. He stated that "the bill amends title 25 to establish a civil cause of action against persons who display for sale or sell goods which falsely claim to be Indian made. This action can be brought by the U .S. attorney, a tribe, or any aggrieved person." 36 CONG. REC. H8292. Like Kastenmeier, Faleomavaega mentioned nothing about suits by Indian arts and crafts organizations.

Congress' deletion of the provision permitting "any person aggrieved" to sue alone sounds the death knell for NAA's interpretation. In omitting this provision in the enacted version, Congress signaled its intent to limit severely the class of plaintiffs permitted to sue directly under the statute. That Congress took away this direct right of action for injured persons seriously undermines NAA's argument that injury automatically begets the right to bring suit. Therefore, the sparse legislative history that directly addresses rights of action under the IACA indicates that Indian arts and crafts organizations do not enjoy the right to bring suit directly.

Not only does NAA lose the legislative history battle, it falters on the policy front as well. NAA argues that the ends of the IACA are best served by permitting Indian arts and crafts organizations to sue. It contends that requiring Indian arts and crafts organizations to sue through representative actions would (1) be inconsistent with the statute's stated purpose of providing a remedy to injured Indian arts and crafts organizations; and (2) subject such organizations to the whims and resource problems of a tribe that may be a "stranger" to the organization with no incentive to sue on its behalf, leaving arts and crafts organizations with no effective remedy. Neither point has merit.

Given the clarity and consistency of the IACA's suit provision with legislative history, it is technically "unnecessary to examine the additional considerations of 'policy' ... that may have influenced the lawmakers in their formulation of the statute." *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 695, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) (citations omitted). Nevertheless, we briefly address these concerns. NAA's first policy argument rings hollow because the statute explicitly provides for injured Indian arts and crafts organizations to receive "any amount recovered" from suit, minus costs and attorneys' fees. *See* 25 U.S.C. § 305e(c)(2). NAA's second point lacks force because the tribe is a perfectly logical enforcer of the statute's objectives. The legislative history on which NAA relies emphasizes that the Act is designed to ensure that producers of authentic Indian goods are not undersold by imitation goods misrepresented as genuine Indian productions. *See* H.R. Rep. 101–400(I) (Feb. 6, 1990), 1990 U.S.C.C.A.N. 6395; 136 Cong. Rec. S18246–01 (Oct. 25, 1990) (statement of Sen. McCain). Congress could well have determined that Indian tribes are best suited to protect their own artistic heritage, even if their goods are marketed through an Indian arts and crafts organization. We agree with Penney's that "[i]t is the tribe who is hurt by the counterfeiter using its tribal identity to promote non-tribal arts and crafts." Def.'s Reply at 7. In addition, Congress could have decided that, given the statute's formidable sanctions (treble

---

(B) by an Indian tribe on behalf of itself, an Indian who is a member of the tribe, or on behalf of a tribal organization; and

(C) by any person aggrieved by any such offer, display, or sale.

damages, punitive damages, injunctive relief and attorneys' fees), the most appropriate plaintiffs are governmental entities (the Attorney General) or quasi-governmental bodies (Indian tribes).

In sum, requiring Indian arts and crafts organizations to sue through tribal representatives is not inconsistent with either the Act's legislative history or Congress' stated policy objectives.

## V  Implied Right of Action

■  NAA raises one final point that we can dispose of quickly. After briefing was completed, NAA filed an Instanter Supplemental Argument asserting that even if this Court does not accept NAA's argument that the statutory language permits Indian arts and crafts organizations to bring suit, it should hold that Indian arts and crafts organizations have an implied right of action under the statute. NAA relies for this proposition on *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which identified four factors for courts to consider in determining whether a plaintiff enjoys an implied right of action under a statute: (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether there is any indication of legislative intent to create or deny such a remedy; (3) whether an implied remedy is consistent with the underlying purposes of the statutory scheme; and (4) whether the cause of action is one traditionally relegated to the states so that it would be inappropriate to infer a federal remedy. *Id.* at 78, 95 S.Ct. 2080. NAA proceeds through the test to arrive at its conclusion that it has an implied right of action under the IACA.

NAA's implied right of action argument fails because it depends on a flawed premise—that the IACA's language does not explicitly reject a direct right of action for Indian arts and crafts organizations. But we

have already found that it does. The IACA's statutory language is clear about who may sue directly (Attorney General and Indian tribes), and who must sue through representatives (Indian arts and crafts organizations). It is absurd to think that Congress would craft such detailed and explicit suit provisions if it intended to undermine those provisions with an implied right of action for Indian arts and crafts organizations. As such, we reject the argument that Congress would give with its right hand what it takes away with its left by granting Indian arts and crafts organizations an implied right of action.[13]

## VI  The Terms of Dismissal

To summarize, NAA has constitutional standing to sue under the IACA. However, the statute's plain language (which is supported by legislative history) mandates that Indian arts and crafts organizations cannot bring suit directly, but must rely on either the Attorney General or an Indian tribe to bring a representative action. We therefore dismiss Count I because it has been brought by an improper plaintiff. The dismissal is with prejudice.

■  NAA attempts to avoid this result by requesting permission to amend its complaint to add a tribal representative "if this Court were to decide this action must be brought by a tribe." Pl.'s Resp. at 14. We reject this belated effort to save Count I because NAA expressly waived its right to amend in open court. On December 9, 1997, the Court put NAA on notice that if it wished to remain as plaintiff instead of amending Count I to add an appropriate representative, NAA would be unable to do so later if the Court rendered an unfavorable decision on standing. We stressed that NAA would then be "headed for a final appealable order . . . I just want to emphasize to you,

---

13. *Significantly, the Seventh Circuit has observed that "the Cort approach [to discerning implied rights of action] . . . has fallen under severe criticism, and questions linger whether the four factor test remains a viable approach." See Mallett v. Wisconsin Division of Vocational Rehabilitation, 130 F.3d 1245, 1248–49 (7th Cir. 1997).* It is well-established that there is a strong presumption against implied rights of action, and that the Supreme Court has become increasingly hostile toward them. *See id.* at 1249. Although a majority of the Supreme Court has not explicitly overruled *Cort*, the Court has retreated from the four-factor analysis and shifted the focus to legislative intent, *see id.*, which, as we already determined, does not support NAA's reading of the statute in this case.

that is your choice, and you're making a strategic choice ...." Transcript of 12/9/97 Proceedings Before the Honorable Ruben Castillo at 3–4. Since the Court carefully warned NAA of the consequences of an adverse decision on standing, NAA must abide by the outcome of its deliberate choice not to amend its complaint. Any potential claim that an appropriate tribal representative brings over this controversy will be a new lawsuit assigned randomly to a new judge.

Having dismissed the only claim supporting our federal jurisdiction, we exercise our discretion to decline supplemental jurisdiction over NAA's state-law claims, Counts II and III. Counts II and III are therefore dismissed without prejudice to their refiling in state court.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. Count I is dismissed with prejudice, and Counts II and III are dismissed subject to NAA's ability to refile them in state court. The Clerk of the Court is directed to enter judgment in favor of the defendant and against the plaintiff pursuant to Fed.R.Civ.P. 58.