HESS V. COHEN & SLAMOWITZ LLP

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2010

(Argued: January 10, 2011                    Decided: February 23, 2011)

                                             Errata Filed: March 10, 2011)

Docket No. 10-424

————————

JONATHAN HESS,

                                                      *Plaintiff-Appellant*,

—v.—

COHEN & SLAMOWITZ LLP,

                                                      *Defendant-Appellee*.

————————

B e f o r e :

POOLER, KATZMANN, and WESLEY, *Circuit Judges*.
————————

Appeal from a judgment of the United States District Court for the Northern District of

New York (Glenn T. Suddaby, *Judge*), dismissing plaintiff's complaint for failure to state a

claim upon which relief can be granted. In his complaint, plaintiff alleged that the defendant, a

debt collection agency, violated the venue provisions of the Fair Debt Collection Practices Act,

15 U.S.C. § 1692i, by suing him on a debt in Syracuse City Court. Plaintiff, who is not a

resident of Syracuse, obtained dismissal of that action on the ground that the parties did not satisfy the residency requirements set forth in Section 213 of New York's Uniform City Court Act. As a matter of first impression in this Circuit, we hold that plaintiff has stated a claim that the underlying debt collection action was not brought in the "judicial district or similar legal entity" in which plaintiff resided as of the commencement of that action, 15 U.S.C. § 1692i(a)(2)(B). We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

———————————

BRIAN L. BROMBERG, Bromberg Law Office, P.C., New York, N.Y. (Peter T. Lane, Bromberg Law Office, P.C., New York, N.Y., Anthony J. Pietrafesa, Law Office of Anthony J. Pietrafesa, Altamont, N.Y., *on the brief*), *for Plaintiff-Appellant.*

DANIEL R. RYAN, Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, N.Y., *for Defendant-Appellee.*

———————————

KATZMANN, *Circuit Judge*:

The Fair Debt Collection Practices Act ("FDCPA") delimits the proper venues in which a debt collector may bring a legal action to collect on a consumer debt. In pertinent part, the FDCPA's venue provisions require that such actions be brought "only in the judicial district or similar legal entity . . . in which [the] consumer resides at the commencement of the action." 15 U.S.C. § 1692i(a)(2)(B). Here, Defendant-Appellee Cohen & Slamowitz LLP ("C&S") brought a debt collection action against Plaintiff-Appellant Jonathan Hess in Syracuse City Court. Hess obtained the dismissal of that action pursuant to Section 213 of New York's Uniform City Court Act on the basis that he did not reside in the City of Syracuse or a town contiguous thereto. Hess then brought suit against C&S in federal court alleging that C&S violated the FDCPA's venue

2

provisions by suing him in Syracuse City Court.  He appeals from the district court's dismissal of his complaint for failure to state a claim.

This case calls upon us to decide a question of first impression in this Circuit:  whether a debt collector violates the FDCPA's venue provisions by suing a consumer in a city court in the State of New York when that court lacks power to hear the action because the consumer does not reside in that city or a town contiguous thereto.  We hold that such a suit is not brought in the "judicial district or similar legal entity" in which the consumer resides, even when the consumer resides elsewhere within the county containing the city court, and therefore determine that Hess's complaint states a claim upon which relief can be granted.  Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

Hess's complaint contains the following well-pleaded, nonconclusory factual allegations, which we must accept as true for purposes of this appeal from the district court's grant of a motion to dismiss.  *See, e.g.*, *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 33 (2d Cir. 2010).

Hess is a resident of the Town of Clay, which is located in Onondaga County, New York. Hess lived in Clay at all times relevant to this action, and during that time, never lived, worked, or maintained a place of business in the City of Syracuse, New York.  Syracuse also is located in Onondaga County, but Clay and Syracuse are not contiguous by land.

C&S, a Woodbury, New York-based limited liability partnership, is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).  In April 2009, C&S sued Hess in Syracuse City Court on behalf of an entity called Midland Funding LLC ("Midland"). Midland's complaint, which was signed by C&S, alleged that Midland was the successor-in-

3

interest to HSBC, to which Hess owed $1520.68 plus interest in credit card debt. The complaint also alleged that Midland was a "foreign limited liability company" and that, "upon information and belief," Hess "resides or has an office in the county in which this action is brought," or that Hess "transacted business within the county in which this action is brought . . . and the instant cause of action arose out of said transaction." App. 12. Hess was served with a summons and this complaint at his home in Clay.

Hess then hired an attorney at a cost of $400. Through this attorney, Hess moved to dismiss the complaint for lack of jurisdiction based on Section 213 of New York's Uniform City Court Act because none of the parties resided in Syracuse or a town that was contiguous thereto by land. In connection with that motion, Hess provided evidence that Midland is a Delaware limited liability company with its place of business in California. Midland did not object to the dismissal of the action without prejudice to its recommencing the suit in the proper court, and the Syracuse City Court granted that relief by letter dated July 28, 2009.

In August 2009, pursuant to the FDCPA's civil liability provisions, 15 U.S.C. § 1692k, Hess brought suit against C&S in the United States District Court for the Northern District of New York, alleging that C&S violated the FDCPA's venue provisions by suing him in a judicial district in which he did not reside. C&S moved to dismiss Hess's complaint for failure to state a claim upon which relief could be granted. The district court granted this motion on two alternative grounds. First, the district court looked to the "common law within the Second Circuit" to conclude that the FDCPA's term "judicial district" meant "county." Second, the district court stated that dismissal was warranted because it "ha[d] difficulty concluding" that C&S's act of bringing suit in Syracuse City Court was "intended to be unfair, harassing, and

4

deceptive," and because even if this act were so intended, adopting Hess's interpretation of the venue provisions would, in the district court's view, impose undue restrictions on ethical debt collectors. *Hess v. Cohen & Slamowitz, LLP*, No. 5:09-CV-0954 (GTS/DEP), 2010 WL 60322, at *1-2 (N.D.N.Y. Jan. 7, 2010).

This appeal followed.

## DISCUSSION

"We review *de novo* a district court's dismissal for failure to state a claim . . . ." *Harrington*, 607 F.3d at 33.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Among the abusive practices that Congress intended the FDCPA to address was the "problem of 'forum abuse,' an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear," hence permitting the debt collector to obtain a default judgment. S. Rep. No. 95-382, at 5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. As a result, Congress adopted venue provisions to ensure that "[a] debt collector who files suit [does] so either where the consumer resides or where the underlying contract was signed." *Id.*

These provisions, codified in 15 U.S.C. § 1692i, state in pertinent part:

(a)     Venue

Any debt collector who brings any legal action on a debt against any consumer shall—

5

. . .

      (2)     . . . bring such action only in the judicial district or similar legal entity—

           (A)    in which such consumer signed the contract sued upon; or

           (B)    in which such consumer resides at the commencement of the action.

Here, it is undisputed that C&S is a debt collector and that Hess is a consumer, and C&S makes no claims regarding the location where the contract sued upon was signed. The sole disputed issue on appeal is whether C&S brought suit in the "judicial district or similar legal entity" where Hess resided as of the commencement of the action.

Where, as here, we are called upon to interpret the meaning of a federal statute, "we look first to the language of the statute itself." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002). "When the language of a statute is unambiguous, 'judicial inquiry is complete.'" *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). In conducting this inquiry, we "review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) (internal quotation marks omitted).

We begin by considering the meaning of the term "judicial district."[1] The word "district" has been defined to mean "a territorial division (as of a nation, state, county, or city) marked off or defined for administrative, electoral, judicial, or other purposes." *Webster's Third New International Dictionary* 660 (2002); *accord Black's Law Dictionary* 544 (9th ed. 2009)

---

[1] There is no argument before us that the phrase "similar legal entity" is of independent significance to our determination of whether Hess has alleged a FDCPA venue violation. Therefore, we join the parties in focusing on the meaning of "judicial district."

(defining "district" to mean "[a] territorial area into which a country, state, county, municipality, or other political subdivision is divided for judicial, political, electoral, or administrative purposes"). Similarly, at the time the FDCPA was enacted, *Black's Law Dictionary* defined the phrase "judicial district" as:

> One of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority; or the district may include two or more counties, having separate and independent county courts, but in that case they are presided over by the same judge.

*Newsom v. Friedman*, 76 F.3d 813, 817 (7th Cir. 1996) (quoting *Black's Law Dictionary* 848 (6th ed. 1990), and noting that previous editions contained the same definition). From these definitions, it is clear that Congress meant the phrase "judicial district" to refer to some territorial subdivision of the courts, but we are still left with the task of identifying which of the multitude of such subdivisions among the nation's various court systems establishes the pertinent boundary as applied to the facts of a particular case.

The parties here assume that when the underlying debt collection action is brought in state court, the term "judicial district" must be determined with respect to the court system of that state — here, New York — as opposed to the federal court system. We agree. The FDCPA applies to debt collection actions brought in state as well as federal courts. *See* 15 U.S.C. § 1692(d) ("Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce."). We see no indication in the text of § 1692i that Congress might have intended the term "judicial district" to refer to the judicial districts of the federal court system even when the debt collection action is brought in state court. Such a reading would be contrary to the FDCPA's purpose of eliminating abusive debt collection

7

practices involving the state courts, including forum abuse, where federal judicial districts tend to be "much larger than correlative state units," *Dutton v. Wolhar*, 809 F. Supp. 1130, 1139 (D. Del. 1992). We thus join the other courts that have considered this issue to conclude that the term "judicial district," as applied to state-court debt collection actions, must be defined in accordance with the judicial system of the state in which the debt collection action is brought. *See, e.g.*, *Newsom*, 76 F.3d at 819-20; *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1515 (9th Cir. 1994); *Dutton*, 809 F. Supp. at 1139.

Our inquiry next turns to the structure of New York's state court system. C&S contends that the term "judicial district or similar legal entity" refers to the county in which the consumer resides or in which the contract was signed.[2] County subdivisions are indeed relevant to New York's state court system, and in particular, to New York's court of general original jurisdiction: the supreme court. "The supreme court is a single court of statewide jurisdiction, with a branch in each county." David D. Siegel, *New York Practice* § 12 (4th ed. 2005) [hereinafter *N.Y. Practice*]. New York's Civil Practice Law and Rules ("CPLR") contains venue requirements applicable to actions brought in the supreme court. These requirements support C&S's interpretation insofar as they generally provide that "the place of trial shall be in the county in which one of the parties resided when it was commenced" and, with respect to actions arising

----

[2] As an initial matter, we note that New York's constitution and Judiciary Law divide the state into thirteen "judicial districts" that consist of one or more counties. *See* N.Y. Const. art. VI, § 6; N.Y. Judiciary Law § 140. The primary significance of these districts relates to the election of justices of New York's supreme court and to matters of judicial administration. *See* David D. Siegel, *New York Practice* § 9 (4th ed. 2005). Although these subdivisions nominally correspond with the statutory phrase "judicial district," C&S does not argue that New York's judicial districts are the relevant "district[s]" for purposes of the FDCPA. We see no reason to conclude otherwise, as the division of the state into groups of counties for such purposes implicates concerns wholly separate from those underlying the FDCPA's venue requirements.

out "consumer credit transactions," provide that "the place of trial shall be the residence of a defendant." CPLR § 503(a), (f).[3]

C&S, however, did not sue Hess in the Onondaga County branch of the supreme court; rather, it brought suit in the city court for the City of Syracuse. Syracuse — like every city in New York — has a city court, which is a court of limited original jurisdiction over, *inter alia*, civil actions involving $15,000 or less in monetary damages. *See* N.Y. Const. art. VI, § 17; N.Y. Uniform City Ct. Act § 202. While New York's Uniform City Court Act (the "UCCA") does not include any provisions that are specifically labeled as relating to "venue," the article of the UCCA entitled "jurisdiction" contains a section specifying requirements that the parties reside or do business within or near the city containing the court. This provision, Section 213 of the UCCA, states:

> In an action [for the recovery of money damages], either a plaintiff or a defendant must:
>
>    1.    be a resident of the city or of a town contiguous to such city, provided that such town is
>
>            (i)    within the same county, and
>
>            (ii)    contiguous to the city by land . . . , or
>
>    2.    have a regular employment within the city; or
>
>    3.    have a place for the regular transaction of business within the city.

UCCA § 213(a).[4] As noted, Hess successfully obtained dismissal of the suit against him in on

---

[3] With respect to lawsuits arising from consumer credit transactions, the CPLR also provides that "the clerk shall not accept a summons for filing when it appears upon its face that the proper venue is a county other than the county where such summons is offered for filing." CPLR § 513(a).

[4] In addition, Section 213(d) of the UCCA provides:

9

the basis that none of the parties had regular employment or a place for the regular transaction of business in Syracuse, and that Clay, where Hess resides, is not contiguous by land to Syracuse.

Against this background, we are called upon to determine whether the statutory term "judicial district" should be defined with reference to the territorial limits of the Syracuse City Court, or whether that term refers to a broader subdivision, such as the county of Hess's residence. The logical first step in resolving this question is to consider the nature of the territorial subdivisions of the court system in which the debt collector brought suit. *See Newsom*, 76 F.3d at 818-19. Because the court system of which C&S availed itself is governed by laws that limit the territorial extent of those courts based on, *inter alia*, a defendant's contacts with the forum, we hold that those laws delimit the "judicial district" by which compliance with the FDCPA's venue provisions must be measured. We thus conclude that the FDCPA's term "judicial district," as applied to a case where a debt collector sues a consumer in one of New York State's city courts, extends no farther than the boundaries of the city containing that court and the towns within the same county that are contiguous by land thereto. Because the proper "judicial district" here does not include the town where Hess resides, we hold that the district court erred by dismissing his complaint.[5]

---

> The requirements of this section shall not be deemed jurisdictional; they shall be deemed waived by the plaintiff upon his commencing an action in the court, and they shall be deemed waived by the defendant unless he raises the objection by motion or in his responsive pleading . . . . Notwithstanding waiver by the parties, the court may, on its own initiative at any time, dismiss an action which does not satisfy the requirements of this section. Any dismissal under this section shall entitle the parties to the benefit of CPLR § 205, relating to an extension of time to commence a new action.

[5] We express no view on whether a consumer could state a claim for a FDCPA venue violation if he were sued by a debt collector in a city court that is within the same county and contiguous by land to the town in which the consumer resided.

10

While C&S offers a number of arguments in support of its position that "judicial district" should encompass the entire county of the consumer's residence even when a consumer is sued in a city court, we are unpersuaded. First, C&S argues that the dismissal of its lawsuit, on consent, does not give rise to a violation of the FDCPA's venue provisions because Section 213 is addressed to the issue of jurisdiction, which C&S contends is irrelevant to the FDCPA's venue analysis. We concede that this argument has a certain superficial appeal, as purposes of venue requirements often differ from those of jurisdictional requirements. As we have observed in a different context, "[w]hereas issues of jurisdiction relate to the basic authority of a court to hear and decide a case, venue, by contrast, is in the nature of a convenience to litigants and subject to their disposition." *Moreno-Bravo v. Gonzales*, 463 F.3d 253, 258 (2d Cir. 2006). Thus, if the Syracuse City Court had dismissed C&S's lawsuit because of jurisdictional limitations that did not relate to the territorial nexus between the consumer and the court — for example, if C&S had demanded damages in excess of the limited jurisdictional amount that can be recovered in a city court — Hess would be hard-pressed to claim that the FDCPA's venue provisions were violated.

It is far from clear, however, that Section 213 is properly characterized as jurisdictional in this sense. While Section 213 is codified in the UCCA under an article entitled "jurisdiction," it also provides in subsection (d) that "[t]he requirements of this section shall not be deemed jurisdictional" insofar as that term implies that they cannot be waived by the parties. Elsewhere in its brief, C&S characterizes Section 213 as "akin to a forum non conveniens provision, in that courts can choose to not hear a case solely because the case lacks sufficient local contacts to the court." Appellee's Br. at 14-15 (citing David D. Siegel, Practice Commentary, UCCA § 213 (McKinney 1989) ("[Section 213] is a kind of forum non conveniens provision in that it can eject

11

a case even though the court has jurisdiction of the subject matter and of the defendant's person. The objection is waivable . . . , which takes it out of the category of subject matter jurisdiction, which it might otherwise fit.")). And even assuming that Section 213 is properly characterized as jurisdictional or quasi-jurisdictional, it does not follow from this label that the provision lacks relevance to the FDCPA venue analysis. The FDCPA's venue requirements restrict debt collectors from suing on debts in "judicial district[s]" that are remote from where the consumer lives or where the underlying contract was signed. Similarly, Section 213 ensures that at least one of the parties has a territorial nexus to the city where the court is located. Where, as here, a state law outlines the required nexus between the residence or activities of the consumer and the location of the court, we hold that such a law sets forth the appropriate "judicial district" for purposes of the FDCPA with respect to debt collection actions brought in that court, regardless of whether that provision is styled as jurisdictional or otherwise.

C&S also asserts that the dismissal here should not give rise to a FDCPA violation because Section 213 provides that actions dismissed thereunder may be refiled in the appropriate court. UCCA § 213(d) (citing CPLR § 205). This is significant, according to C&S, because if a debt collection case is dismissed under Section 213 based on the consumer's non-residency, the debt collector will either abandon the case or refile in a jurisdiction that is convenient for the consumer. We do not agree. It is irrelevant to the FDCPA whether state law sets forth a procedure for refiling actions that are dismissed based on defective venue; indeed, we would expect that such dismissals would in the ordinary course be without prejudice, as venue relates to the convenience of the parties rather than the validity of the claim. *Cf. Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). The ability of the debt collector to refile the suit in

12

fact contributes to the threat of "forum abuse" that inspired Congress to enact 15 U.S.C. § 1692i.

Absent § 1692i, debt collectors might have an incentive to bring suits against consumers in

distant and inconvenient courts in the hopes of obtaining a default judgment, especially if they

face no risk of losing their ability to pursue the suit in the event the consumer were to appear and

seek dismissal or transfer because of improper venue. And as demonstrated by the facts alleged

in Hess's complaint, it is not without cost for a consumer to obtain dismissal of a debt collection

suit on the basis that it was brought in the incorrect court.

We also see no anomaly arising from the possibility that if C&S had sued Hess in the

supreme court for Onondaga County, venue would have been proper anywhere within the

county. *See* CPLR § 503(a), (f). To the extent that the supreme court was a viable alternative

forum,[6] it was C&S's choice to sue Hess in the city court. And when a debt collector elects to

sue in a court of limited original jurisdiction, the FDCPA requires, at the very least, that the suit

be brought in a court where the consumer's non-residency or lack of contacts thereto does not

serve as a bar to further proceedings.[7]

---

[6] While the supreme court nominally has jurisdiction even over actions that are within the jurisdiction of a city court, it is "the state's policy to have a money action brought in the lowest court jurisdictionally competent to entertain it." *N.Y. Practice* § 12. To this end, a plaintiff may not recover costs if it brings in the supreme court an action that could have been brought in a city court and then recovers less than $500. CPLR § 8102(2). Moreover, New York's courts are empowered by the state's constitution and the CPLR to transfer cases, even *sua sponte*, to lower courts with concurrent jurisdiction. N.Y. Const. art. VI, § 19(a); CPLR § 325(c)-(d). We also note that C&S paid only $45 to file a complaint in Syracuse City Court, App. 13, UCCA § 1911(a)(1), whereas it would have had to pay the Onondaga County Clerk a fee of $190 to obtain an index number for an action in the supreme court, CPLR § 8018(a).

[7] We observe that under the facts alleged here, C&S could have chosen to sue Hess in the town court for the Town of Clay and that such suit would not violate § 1692i. Each of New York's towns and villages has a local court, collectively referred to as "justice courts," with jurisdiction over civil claims involving money damages of $3000 or less. *See N.Y. Practice* § 22; N.Y. Uniform Just. Ct. Act § 202. Section 213 of the Uniform Justice Court Act ("UJCA") sets

13

Finally, we turn to the two rationales offered by the district court in support of its dismissal of Hess's complaint, and first take up its conclusions that C&S's actions were not necessarily intended to be unfair, harassing, or deceptive, and that adopting Hess's interpretation would risk unfairly penalizing ethical debt collectors. We agree that the concerns identified by the district court were shared by Congress, as reflected in the FDCPA's stated purposes and legislative history, although we have held that Congress's primary purpose was to enact a statute that would protect consumers from abusive debt collection practices, *see Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008). At any rate, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (internal quotation marks omitted). Here, the district court's conclusions about whether C&S's actions comported with the purposes of the FDCPA were not sufficiently tethered to the statutory text.

To be clear, we take no position on whether, as the district court hypothesized, C&S's failure to identify the proper forum may have been an isolated and innocent error resulting from a lack of familiarity with local practice. The record before us on this appeal from a Rule 12(b)(6) dismissal does not contain facts sufficient to arrive at any such conclusion. The FDCPA provides C&S with an opportunity to make such a showing in due course, as it exempts from liability a debt collector that "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of

forth residency requirements analogous to those contained in the corresponding section of the UCCA, except that the UJCA refers to residence or business within a "municipality" rather than a city and does not cover residence in a municipality contiguous to where the justice court is located. The fee to file a complaint in a town court is only $20. UJCA § 1911(a)(1).

14

procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). But this is an affirmative defense; "[t]o recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Thus, the FDCPA sets forth the proper mechanism for taking account of the debt collector's assertion of a good faith mistake, and it is premature to determine whether C&S qualifies for this affirmative defense on the basis of the present record.

Alternatively, the district court referred to "common law within the Second Circuit" — by which it apparently meant the holdings of other district courts within this Circuit that have considered similar issues — to discern a consensus that "judicial district" means "county" as applied to debt collection actions brought in New York state courts. The district court relied on three cases: *Howell v. Citibank (S.D.), N.A.*, No. 08-CV-6203, 2009 WL 152700 (W.D.N.Y. Jan. 21, 2009); *Katz v. Asset Acceptance, LLC*, No. CV-05-2783 (DGT), 2006 WL 3483921 (E.D.N.Y. Nov. 30, 2006); and *Wiener v. Bloomfield*, 901 F. Supp. 771 (S.D.N.Y. 1995). For the following reasons, these cases, which are not binding on us, do not persuade us to adopt the interpretation urged by C&S.

While the court in *Wiener* noted that the term "judicial district" "has been held to mean 'county' when determining whether a state court action has been filed in the proper judicial district," 901 F. Supp. at 776, that case involved a Westchester County resident whom a debt collector threatened to sue in Bronx County, and thus does not speak to the question presented here. *Katz* holds that a debt collector violated § 1692i by suing a Kings County resident in New York County, though the court concluded that the debt collector had made a sufficient factual showing that its mistake was a bona fide error. 2006 WL 3483921, at *2-3. *Katz*'s finding of

15

prima facie liability under § 1692i cannot be understood to suggest that "judicial district" must always be interpreted to mean "county."

Unlike the other two cases, *Howell* is apposite to the instant case, as it involved a debt collector's suit in a city court where the consumer lived in a different town within the same county, and held that this suit did not violate § 1692i. The *Howell* court reached this conclusion by citing to *Wiener* and *Katz*, which we think are distinguishable, and also by noting that the two courts in question were "located within several miles of each other" and finding that this distance neither "present[s] a substantial burden upon the debtor nor support[s] the argument that the defendants were attempting to secure a default judgment by filing in a distant venue." 2009 WL 152700, at *4. We do not find this analysis to be compelling. We see no indication that Congress, by requiring debt collection suits to be brought in the appropriate "judicial district," intended courts to engage in a case-by-case assessment of the actual burden imposed on the debtor or of the debt collector's intentions in bringing the suit. Rather, by tying the meaning of "judicial district" to the subdivisions of the court system where the debt collector's suit is brought, we adopt a standard that enables debt collectors to predict with accuracy and ease whether suing a consumer in a given forum would violate the FDCPA's venue provisions.

We close by noting that the conclusion we reach today is consistent with that of the only of our sister Circuits that has devoted extended consideration to the meaning of this statutory phrase.[8] In *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), the Seventh Circuit concluded

---

[8] We join a number of other federal district courts that have held that territorial subdivisions that are smaller than counties can form the pertinent "judicial district" for FDCPA venue purposes. *See Harrington v. CACV of Colo., LLC*, 508 F. Supp. 2d 128, 133-34 (D. Mass. 2007) (holding that debt collector violated § 1692i by filing suit in a "judicial district," which consisted of several towns within a county, adjacent to the judicial district containing the town where plaintiff resided, even where Massachusetts law provided that venue may lie in the

16

that municipal department subdivisions of Illinois circuit courts did not amount to "judicial district[s]" for purposes of the FDCPA; rather, the appropriate "judicial district[s]" were demarcated by that state's circuit courts, which each cover one or more counties, *id.* at 819. While this holding may at first glance appear to be in tension with our result here, any such contradiction disappears upon inspection of the salient differences between the two states' court systems.

*Newsom* noted that a general order of the Cook County Circuit Court directed that civil actions below a certain monetary threshold should be filed in the municipal department where the defendant resided or where the cause of action arose, and as such, amounted to a "quasi-venue" provision. *Id.* at 818-19. However, other general orders made clear that actions could be heard, tried, or assigned to judges anywhere within the circuit court and that no action could be dismissed because it was filed in the wrong municipal department. Thus, *Newsom* concluded that municipal departments were the product of "administrative rules to facilitate [the circuit court's] own administration" rather than the circuit's "dividing itself into legally distinct judicial districts," and noted that "the boundaries between the Municipal Department administrative subdistricts do not set any territorial limits to the subdistrict's authority within the Circuit." *Id.* at 819. Here, unlike the municipal subdistricts of an Illinois circuit court, the city courts within

---

judicial district adjacent to the district where one of the parties resides); *Nichols v. Byrd*, 435 F. Supp. 2d 1101, 1108 (D. Nev. 2006) (same, where plaintiff was sued in a "justice court" that lacked territorial jurisdiction over the township where plaintiff resided); *Pabon v. Recko*, No. 3:00cv380, ECF No. 100, slip op. at 18 (D. Conn. Apr. 25, 2001) (same, where plaintiff was sued in a "small claims area" distinct from the small claims area where plaintiff resided, even though the two areas were part of the same Connecticut "judicial district" and county), *recommended ruling adopted*, ECF No. 110 (D. Conn. May 22, 2001); *see also Addison v. Braud*, 105 F.3d 223, 224 (5th Cir. 1997) (holding, with little analysis, that debt collector violated § 1692i by filing suit in Baton Rouge City Court where that court had no jurisdiction over the plaintiffs, who resided in a different town).

17

New York State's court system involve far more than a mere subdivision for administrative convenience of the court of general original jurisdiction. Unlike the orders governing the subdistricts in *Newsom*, the laws regarding actions brought in city courts set forth territorial limits on the authority of those courts and provide that suits failing to comply with those requirements may be dismissed. *See* UCCA § 213(d). And here, in contrast to *Newsom*, actions brought in a particular city's court may be transferred to another city or local court in the same or adjoining county that has jurisdiction over the matter only in very limited circumstances that are not present in this case. *See* CPLR § 325(g). For these reasons, it does not follow from *Newsom* that "judicial district" means "county" as applied to actions brought in New York State's city courts.

## CONCLUSION

In summary, we hold that Hess has stated a claim that the underlying debt collection action was not brought in the "judicial district or similar legal entity" in which he resided as of the commencement of that action, 15 U.S.C. § 1692i(a)(2)(B). For the foregoing reasons, we **VACATE** the district court's judgment dismissing the complaint and **REMAND** for further proceedings consistent with this opinion.

18