POSNER, Circuit Judge, dissenting.
The panel majority, in affirming the dismissal of this suit, understandably relies heavily on Newsom v. Friedman, 76 F.3d 813 (7th Cir.1996). But Newsom is unsound and should be overruled. It interpreted the same provision of the Fair Debt Collection Practices Act that we’re asked to interpret in this case, but, like this case, it did so without reference to the Act’s purpose. It treated statutory interpretation as a purely semantic activity — as it can be when the státutory language is extremely clear; but when it is not, the purpose of the statute can’t be ignored, as it was in Newsom and is again today. Echoing Newsom, the opinion in the'present case says that it “simply construe[s the term ‘judicial district’] according to its common meaning,” consistent with the principle that “Congress intends to adopt the common law definition of statutory terms.” But there is no “common meaning” of judicial district, let alone a “common law meaning.” And why would Congress want to give a statutory term a common law meaning, anyway?
Purposive interpretation must not be confused with the interpretive approach championed by the Supreme Court in the 1960s, as in J.I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) — finding implicit in statutes rights (for example, to seek damages for a violation of a statute that does not specify damages as a remedy) that would make the statute more likely to achieve its aim. That now-abandoned approach overlooked the fact that statutes are very often the product of compromise. It can’t be assumed that in passing a statute that creates a remedy for a perceived wrong, Congress, wants the courts to amend the statute (in the guise of interpretation) by *692 adding remedies that will increase the statute’s severity, thus overriding limitations on that severity that may have been the price for getting the statute enacted. But what our court did in Newsom and does again today is not to strengthen a statute that Congress might not have wanted strengthened, but to weaken a statute that Congress had given no evidence of wanting weakened.
The Fair Debt Collection Practices Act is designed to prevent excesses by debt collectors. 15 U.S.C. § 1692(a), (e) (“it is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors”); Muha v. Encore Receivable Management, Inc., 558 F.3d 623, 629 (7th Cir.2009); Jacobson v. Healthcare Financial Services, Inc., 516 F.3d 85, 89 (2d Cir.2008). By “debt collectors” is understood firms that try to collect consumer debts, which usually are too small to justify a lawsuit unless the debt is promptly defaulted, thereby enabling the debt collector to obtain — -without incurring significant litigation cost — a judgment that it can use to collect the debt by garnishing the debtor’s wages. O’Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 940 (7th Cir.2011) (“with the costs of litigation and the difficulties establishing the debt, when a debt collector cannot get payment through phone calls and letters and it has to go to court, the debt collector will often rely on default judgments as the last resort”); see Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775 (7th Cir.2007); White v. Goodman, 200 F.3d 1016, 1019 (7th Cir.2000); Bernice Yeung, “Some Lawyers Want to Keep Debt Collection Out of the Courts,” New York Times, Apr. 23, 2010, p. A21A, www. nytimes.com/2010/04/23/us/23sfdebt.html (visited Oct. 30, 2013). Deprived of contested litigation as a feasible means of obtaining repayment of a small debt, debt collectors resort to substitutes, some unsavory, such as harassment, as noted in such cases as FCC v. Pacifica Foundation, 438 U.S. 726, 749 n. 27, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), and Horkey v. J.V.D.B. & Associates, Inc., 333 F.3d 769, 771 (7th Cir.2003); see also W. Page Keeton et al., Prosser and Keeton on Torts § 12, pp. 61-62 (5th ed.1984).
One harassing tactic is to file a claim against a debtor in a court remote from his home or place of work, in the hope that he’ll default rather than take the trouble to travel to the remote site of the court, see Hess v. Cohen & Slamowitz LLP, 637 F.3d 117, 124 (2d Cir.2011); or to file in a court in which judges are unsympathetic to debtors. In short, debt collectors shop for the most advantageous forum, abetted by decisions such as the one in this case.
It is against this background, rather than in a vacuum, that we should be interpreting the provision of the Fair Debt Collection Practices Act at issue in this case. That provision states that unless the debt sued on is secured by real estate, a debt collector can bring a legal action to collect it “only in the judicial district or similar legal entity — (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action.” 15 U.S.C. § 1692i(a)(2). (If real estate is security for the loan, as it is not in this case, the action must be brought in the judicial district or similar legal entity in which the property is located, § 1692i(a)(l); that will usually be an advantageous venue from the debt- or’s standpoint.) The bigger the district and therefore the more courts it contains and the farther the debtor may have to travel to the court chosen by the debt collector to sue the debtor in, the greater the debt collector’s opportunity to forum shop. The natural objective to impute to the quoted venue provisions, and thus to the key term “judicial district or similar *693 legal entity,” is to limit forum shopping by debt collectors. A purposive interpretation of the phrase would ask what interpretation would protect consumer debtors without crimping the collection efforts of debt collectors beyond the point fixed or implied in the statute.
Newsom did not take the approach I’ve suggested; nor does the panel in this case. Both opinions take a purely semantic approach: the court asks what meaning can be assigned to “judicial district” and “similar legal entity” -without reference to statutory purpose. One possible outcome of the semantic approach would be that “judicial district” means anything called a “judicial district,” and “similar legal entity” anything that is identical to some (maybe any) judicial district but called by a different name. Suppose a state had a judicial structure identical to that of another state, but the other state was divided into “judicial districts” while the first state was divided the same way but its “districts” were called “judicial divisions.” Those divisions would be similar legal entities within the meaning of the Fair Debt Collection Practices Act on the literalistic interpretation that I’m assuming, but divisions of federal districts would not be. The Northern District of Illinois is divided into two divisions, called the Western Division and the Eastern Division. Obviously they are not identical to the Northern District; they are components of it. So under the approach adopted in Newsom and the present case, if a debtor lived in and had signed a loan contract in Chicago (which is in the Eastern Division), a debt collector could (in the unlikely event of being able to find a federal jurisdictional basis for suing the debtor in federal court) nevertheless sue the debtor in Rockford. That city is in the Western Division — and is 89 miles by car from Chicago. In Montana, by the logic of Newsom and the majority opinion in the present case, a resident of Billings could be made by a debt collector to drive 346 miles one way to the federal courthouse in Missoula to defend against the debt collector’s suit, even though Billings has its own federal courthouse, because both courthouses would be in the same “judicial district,” namely the District of Montana.
Newsom concerned debt collection in Illinois rather than, as in this case, Indiana. The Illinois Constitution divides the state into Judicial Circuits, which are analogous to federal districts. The Circuit Court of Cook County (the most populous Illinois county, as it is the county that contains Chicago) has created six Municipal Department Districts. Newsom v. Friedman, supra, 76 F.3d at 818. The First Municipal District is Chicago, and has courts at nine locations, www.cookcounty court.org/aboutthecourt/Municipal Department/’ FirstMunicipalDistrictChi cago.aspx (visited Oct. 30, 2013). Suits for debts that do not exceed a specified amount ($30,000 in Chicago, $100,000 in the suburbs, see Circuit Court of Cook County General Order Nos. 1.2, 2.3(b)(1), (2)) may be filed in a Municipal Department court in the district in which either the debtor resides or the transaction giving rise to the debt took place — venues similar to those specified in the Fair Debt Collection Practices Act. But the Cook County ordinance that creates these Municipal Department courts authorizes the Circuit Court to transfer suits filed in a Municipal Department court to any other court in the county, which needn’t be a Municipal Department court. Cook County General Order No. 1.3(a). There is also authorization for transfer “to any other department, division or district” of the Cook County Circuit Court “for the convenience of parties and witnesses and for the more efficient disposition of litigation.” Id., 1.3(d). This provision seems to have *694 been decisive in the ruling in Newsom that the Municipal Department Districts are not judicial districts or similar legal entities within the meaning of the Fair Debt Collection Practices Act. The “judicial district or similar legal entity” is, according to Newsom, Cook County.
I don’t get it. The land area of Cook County is almost 1000 square miles. The county stretches 47 miles from its southern to its northern border. Debt collectors can easily find a court that is inconvenient to the debtor in which to sue him. For example, while suburban Evanston Hospital is fewer than 5 miles from the Second Municipal District Courthouse in Skokie, it is more than 40 miles from the Sixth Municipal District Courthouse in Markham. The debt collector in Newsom sued the debtor in downtown Chicago, more than 30 miles from Schaumburg, where the debtor lived — and where the debt collector could have sued her.
I can think of no reason related to the Fair Debt Collection Practices Act for disqualifying the Cook County Municipal Department Districts from being regarded as judicial districts or similar legal entities. No reason is given in the Newsom opinion or in the majority opinion in the present case. To deem them judicial districts or similar legal entities would prevent forum shopping by debt collectors that can undermine the effectiveness of the federal act. It is especially puzzling that the court in Newsom, committed as it was to a literalistic approach to statutory interpretation, refused to classify Cook County’s Municipal Department Districts as judicial districts, while classifying Cook County Circuit as a judicial district. So literalism went out the window.
The court thought that only a judicial entity created by the Illinois Constitution could be a judicial district. (The Municipal Department Districts had been created by the Circuit Court of Cook County.) Where does that idea come from? There isn’t even a semantic basis for limiting the definition of “judicial district” to a district created by state rather than county law; the words “state,” “county,” “city,” or “township” do not appear in section 1692i.
That is the section we’re interpreting, and Newsom should have related it to what the Circuit Court of Cook County had done. It had created Municipal Department Districts for the convenience of litigants, lawyers, and judges. It had divided the county into six districts and placed a courtroom near the center of each, all for convenience’s sake. Section 1692i says in effect: “debt collector, you must sue in the court most convenient to the debtor.” The court in Newsom failed to put two and two together.
Marion County, which is coterminous with the City of Indianapolis, is Indiana’s most populous county, and is thus to Indiana as Cook County (dominated by Chicago) is to Illinois. Alone among Indiana counties it has “Township Small Claims Courts” (nine in number), which are similar to Cook County’s Municipal Department District courts, although their jurisdiction is limited to claims that do not exceed $6,000. Ind.Code § 33-34-3-2. A report commissioned by the Indiana Supreme Court and authored by two Indiana appellate judges found that debt collectors seek out judges who favor debt collectors and are distant from the debtor’s residence.
Although the right to a change of venue appears on the Notice of Claim, many defendants are unaware that they have a right to ask the court to transfer the case to the townships where they live. Defendants without private transportation face few realistic options for travel to township courts outside their own townships. For example, it can take *695 more than three hours, roundtrip, to travel from Lawrence Township to the Decatur Township Small Claims Court via city bus. Litigants who choose to take a taxi instead will pay an extraordinary amount to travel from Lawrence Township to Decatur Township.
John G. Baker & Betty Barteau, Report on the Marion County Small Claims Courts 13-14 (May 1, 2012), www.in.gov/judiciary/ files/púbs-smclaims-rept-2012.pdf (visited Oct. 30, 2013).
The named plaintiff in this case lives in Hancock County, which adjoins Marion County on the east. There is, as noted in the report on the County’s small*'claims courts, a Township Small Claims Court in Lawrence, which is on the east side of Marion County, close to the plaintiffs residence. The defendant debt collector could have sued him there because that was where the debt had been incurred. Instead it sued him in the Township Small Claims Court in Pike Township, at the western end of Marion County, 20 miles from Lawrence and a 54-mile round trip from the plaintiffs home. A debtor has a right to a change of venue to a more convenient small-claims court — but only if he files a motion within ten days of service. Ind.Code § 33-34-3-l(a). How many small debtors have heard of “venue” or would think to ask for a transfer of the suit against them to another court — much less within ten days? Debt collectors have a wide choice of courts in which to sue; in practice, even if not in principle, the debtors do not.
The debt collector’s brief, dry as dust, makes no effort to relate the meaning of “judicial district or similar legal entity” to the purpose of the Fair Debt Collection Practices Act. The plaintiffs briefs are pretty dry as well, but do at least explain how the forum shopping enabled by the approach taken in Newsom denies important protections to debtors — though of course the plaintiff tries to distinguish that decision from this case. He points us to Hess v. Cohen & Slamowitz LLP, supra, which held that the City Courts of New York State, which are similar to Cook County’s Municipal Department District courts and Marion County’s Township Small Claims Courts, are judicial districts under the Fair Debt Collection Practices Act. But the court in Ness distinguished Newsom, rather than rejecting it, on the ground that the Municipal Department District courts had- been created by the Circuit Court of Cook County as a matter of administrative convenience and (as I noted earlier) the Circuit Court can reassign a case from one divisional court to another, while the circumstances in which reassignment of a case is possible from one City Court to another in New York are “very limited.” 637. F.3d at 127. What any of this has to do with the concerns behind the venue provisions of the Fair Debt Collection Practices Act escapes me. What’s true is that a debt collector is free to choose a court system (federal, county, city, or township, depending on jurisdictional requirements) in which to file. But once it makes its choice, section 1692i requires it to pick the most convenient court within the system’s territorial limits. That would be Lawrence Township court in this case, Clay town court in Hess (as that court held), and the Third Municipal District in Newsom, contrary to our holding in that case.
The defendant debt collector in the present case specializes in collecting debts for medical treatment, and many of the debtors are elderly or in poor health (often of course both), which makes them especially vulnerable to the defendant’s disreputable tactics.