FLAUM, Circuit Judge, with whom KANNE, Circuit Judge, joins,
dissenting.
The court’s new rule — defining “judicial district” in § 1692i of the Fair Debt Collection Practices Act as the smallest geographic area used for determining venue wherever the debt collector files the case — may be a laudable one, as a matter of policy. However, our task is not to fine-tune statutes, but to reason through Congress’s language as we find it. And while the majority’s definition is arguably consistent with the general purpose behind the FDCPA, it is clearly not compelled — nor even suggested — by the statutory text.
When Congress does not define a statutory term or phrase, courts normally use its ordinary meaning. See, e.g., Sebelius v. Cloer, — U.S. —, 133 S.Ct. 1886, 1893, 185 L.Ed.2d 1003 (2013). Congress’s omission of a definition for the phrase “judicial district” suggests that it meant to refer to judicial districts as they are defined by the government that established the relevant courts. For debt-collection suits, those courts are usually state courts. In this case, the state is Indiana, so our inquiry should be whether Indiana created separate judicial districts when it established the Marion County township courts. In my view, the township courts are subdivisions of a single judicial district, which is Marion County as a whole. Cf. Ind.Code § 33-33-49-2 (“Marion County constitutes the nineteenth judicial circuit.”).
But instead of deferring to the state’s definition of its districts, the majority replaces congressional silence in § 1692i with a purposive definition of judicial district that is of the majority’s own design. In doing so, the court federalizes the term “judicial district” for the purposes of the FDCPA. I decline to join this decision because I believe the court’s rule seizes upon a general congressional purpose behind the FDCPA — protecting debtors from abusive collection practices — to craft a rule more exacting than Congress intended. A high-level statutory purpose is simply an insufficient justification for .this stringent new rule.
To take a step back: § 1692i makes it a violation of federal law for a debt collector to file a collection action any place other than the “judicial district or similar legal entity [where the] consumer signed the contract sued upon [or where the] consumer resides.” 15 U.S.C. § 1692i. This prohibition restricts the locations where a collection action can lawfully be filed, but only to the level of the “judicial district” (or similar legal entity); if a judicial district is subdivided into smaller component parts, a debt collector may still have some leeway in deciding where to file.
The majority holds that the judicial district referenced in § 1692i should be defined so as to advance the federal goals of combating unfair and abusive collection practices. But as I read the statute, that section directs us to incorporate judicial districts as they are defined by the states— § 1692i is not meant to modify the *656 concept of judicial district. The majority believes that this approach renders § 1692i meaningless, because if Congress merely wished to adopt state jurisdictional rules, there would have been no need for a federal prohibition in the FDCPA. This understanding is incorrect for two reasons.
First, under my interpretation of § 1692i, the FDCPA still imposes a harsher penalty on collectors who fail to honor existing state jurisdictional and venue rules. Congress meant to combat default-judgment-seeking debt collectors who file suit in courts “so distant or inconvenient that consumers are unable to appear.” S.Rep. No. 95-382, at 5 (1977). Without the FDCPA’s federal overlay, this tactic may be a low-stakes gambit — the only downside to filing in the wrong court is that the case will get moved if perchance the debtor shows up. Section 1692i thus gives state-law jurisdiction and venue rules teeth.
Second, my reading of § 1692i still places meaningful restrictions on state law, by restricting filings to the judicial district where the debtor lives or signs a contract. Even if state venue rules permitted a creditor to file in the district where the debtor works, for example, this would not be permissible under the FDCPA.
Where I part with the majority is its sole emphasis on venue rules to define the scope of a judicial district or similar legal entity. Judicial districts are products of positive law — they exist because a governmental entity established courts and then divided them into units. But states need not set the boundaries of their judicial districts by their venue rules alone. It is perfectly appropriate for a state to choose to consider other factors, like geography, administrability, convenience, or subject-matter specialization — as I believe Indiana has done in Marion County. Indeed, the evidence of congressional intent regarding § 1692i suggests that Congress intended to preserve state law: a House Committee report indicates that the FDCPA’s venue provision does “not change State or Federal law relating to venue [or] service of process.” H.R.Rep. No. 95-131, at 6 (1977). But the majority’s approach could force a de facto change on the states.
We simply have no basis to conclude that Congress would have thought it unfair or abusive if a debt collector files suit within the state-defined judicial district, but in a venue that is not closest to the debtor. If Congress had wanted to impose a new federal concept of a judicial district — one more exacting than the existing units created by state law — Congress would have had to do so far more clearly. Cf. BFP v. Resolution Trust Corp., 511 U.S. 531, 543-45, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (defining a disputed term in the Bankruptcy Code in light of relevant state law and noting that Congress must be explicit if it wishes to adjust the balance of state and federal authority). Further, it makes sense that Congress would reference the judicial districts already created by the states, as the FDCPA must be applied to all fifty of them despite their individual structural idiosyncrasies. The Federal Trade Commission’s fair venue standards, cited approvingly in a Senate Committee report on the FDCPA, likewise do not define judicial district, but instead take the state’s structure as a given. S.Rep. No. 95-382, at 5. In short, I see no indication that Congress would have thought “judicial district or similar legal entity” meant only “the smallest geographic area that is relevant for determining venue.” Op. at 638. (Indeed, as Judge Kanne’s dissent demonstrates, the peculiarity that would result from applying the majority’s rule in federal debt-collection actions strongly suggests that this rule is not what Congress had in mind.)
*657 Our decision in Newsom v. Friedman, 76 F.3d 813 (7th Cir.1996), properly recognized that states are responsible for defining their own judicial districts. Newsom refers to the definition of “judicial district” found in the Black’s Law Dictionary in effect when the FDCPA was enacted: “One of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority.” Newsom, 76 F.3d at 817.
I continue to believe that Newsom’s virtue lies in the way it balances the protection of debtors with the realities of varied and unique state-court systems. Newsom has us look to state law — and more specifically to court rules and administration — to discover how the state defines its judicial districts.
Judge Kanne thoroughly explains why the county, and not the township, is the proper judicial district when we focus on Indiana specifically. But I hasten to add that in many cases, the analysis under either Newsom or the court’s new rule will be the same. For example, if an Indiana debt collector files in the superior court — a county-level trial court of general jurisdiction that is found throughout the state— the analysis is straightforward and the debt collector need only file in the proper county. The new rule is satisfied because the county is the smallest area for determining venue in the superior court. And the county is the judicial district under Newsom because the superior court is the court of general jurisdiction and the common division statewide. 76 F.3d at 818. Things get trickier in courts of limited jurisdiction like the township courts in this case. The difficulty arises in deciding whether these limited-jurisdiction courts are subdivisions of a larger district or freestanding judicial districts themselves. Limited-jurisdiction courts can be judicial districts, but need not be in all cases. Compare Newsom, 76 F.3d at 819 (limited-jurisdiction municipal-department districts were not separate judicial districts), with Hess v. Cohen & Slamowitz, 637 F.3d 117, 119 (2d Cir.2011) (Syracuse city courts were separate judicial districts). For these limited-jurisdiction courts, Newsom asks how the courts function and considers territorial restrictions on the filing of suits. 76 F.3d at 817-19. This inquiry requires us to consider whether an action has been filed in the proper judicial district as defined by the state — which is quite likely what Congress had in mind.
The majority opinion deconstructs the historical bona fides behind the Black’s Law definition of judicial district and concludes that there is no common-law definition of the phrase. But I do not find this analysis particularly illuminating. In Newsom, we turned to Black’s in part because its definition took a commonsense tack to defining a judicial district. What is important about Newsom’s definition is that it gives courts valuable guidance while also providing leeway to decide what states consider to be their own judicial districts.
I close by noting that I believe Newsom is consistent with the Second Circuit’s decision in Hess, 637 F.3d 117 — more so, in fact, than the court’s rule. Like Newsom, Hess directs courts to look at the specifics of state law to define judicial districts. The Syracuse city courts at issue in that case had no authority to hear a case if the resident lived outside of Syracuse or the adjoining towns. If a defendant from outside this zone showed up to court and objected, the court did not transfer a case, but dismissed it, because the filing was improper under state law. Id. at 121-23. Therefore, the Hess court concluded that the city court was a freestanding judicial district under New York law. Newsom *658 similarly looked to state law. But in contrast to the city court in Hess, the courts at issue in Newsom were not judicial districts, in part because the filing of the debt collection suits was not improper under state law.
The court’s new rule, contrary to Hess and Newsom, does not give appropriate deference to the way a state chooses to structure its own court system. For this reason, I would uphold Newsom, and I respectfully dissent from the majority’s decision to overrule it.