Dawn M. NEWSOM, on behalf of herself and all others similarly situated, Plaintiff–Appellant,

v.

Lawrence FRIEDMAN, Defendant–Appellee.

No. 95–1453.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1995.

Decided Feb. 5, 1996.

---

Daniel A. Edelman (argued), Cathleen M. Combs, J. Eric Vander Arend, Michelle A. Weinberg, O. Randolph Bragg, Tara L. Goodwin, Cathleen C. Cohen, Edelman & Combs, Chicago, IL, for Plaintiff–Appellant.

Barry L. Kroll (argued), David E. Morgans, Hall Adams, III, Williams & Montgomery, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Lawrence Friedman is a Chicago attorney who specializes in collecting debts. He filed suit against Dawn Newsom in the first municipal district of the Circuit Court of Cook County. The court where he filed was located in the Daley Center in downtown Chicago. Friedman obtained a default judgment and initiated collection proceedings. Because Newsom resided in the third municipal district located in a suburb of Chicago, she filed this suit against Friedman (on behalf of herself and similarly situated debtors) claiming violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692i ("FDCPA"). The FDCPA requires that such collection suits be filed in the judicial district where the debtor resides or where the debt was incurred. The district court concluded the suit was properly filed and granted Friedman his motion to dismiss. Newsom appeals and we affirm.

## I. Background

Ms. Dawn Newsom, who resides in Schaumburg, Illinois, received medical services at Elmhurst Memorial Hospital in DuPage County. Newsom apparently never paid her bill, and the hospital subsequently hired Lawrence Friedman, a Chicago attorney who specializes in debt collection, to recover the debt. Friedman filed a debt collection action in the Circuit Court of Cook County, in the first municipal department

district in the downtown Chicago courthouse at Daley Center, and obtained a default judgment when Newsom failed to contest the claim. Friedman subsequently filed a wage garnishment action in the same court, at which point Newsom filed this federal class action suit alleging Friedman's actions violated the FDCPA. The FDCPA requires that debt collection actions be filed in the "judicial district or similar legal entity" where the debtor resides or where the transaction occurred. According to Newsom, Friedman was required to file the debt collection in the third municipal department district of the Circuit Court of Cook County, where she resides. She argues that a municipal department district is a "judicial district" under the federal act.

Friedman moved to dismiss, claiming that the FDCPA provision requiring that debt collection actions be filed in the "judicial district or similar legal entity" only required that he file the action in the Circuit Court of Cook County, which is coterminous with the boundaries of Cook County. He claimed he was not required to file in any administrative subdistrict within the Circuit Court. The district court granted Friedman's motion. Although the court thought the phrase "judicial district or similar legal entity" was ambiguous, based on its legislative history and on district court decisions in other federal circuits, it concluded that in Illinois the phrase means circuit court. Because Friedman had filed in the Circuit Court of Cook County, the district court concluded, no violation of the FDCPA had occurred.

## II. Analysis

We review the district court's dismissal for failure to state a claim *de novo*. *Jenkins v. Heintz*, 25 F.3d 536, 537 (7th Cir.1994), *aff'd*, —— U.S. ——, 115 S.Ct. 1489,

131 L.Ed.2d 395 (1995). This court has previously reviewed the history and purpose of the FDCPA. *Id.* at 538. Briefly stated, Congress tipped the balance between debtor and debt collector to correct what it determined were abuses in debt collection practices. *Id.* at 538. Among other provisions, the forum restrictions in section 1692i require debt collectors to file debt collection lawsuits in the "judicial district or similar legal entity" where the debtor resides or where the debt arose. 15 U.S.C. § 1692i(a)(2)(A), (B) (1982).

The district court examined this phrase and decided it was ambiguous. In the absence of any federal appellate direction, the district court resorted to an examination of decisions from other federal district and state courts along with an analysis of the legislative history of the act and an interpretation of the intent of Congress.[1] A court may examine legislative history when it encounters language in a statute that is undeniably ambiguous, but it should be the final option. A court's first obligation when construing the meaning of a law enacted by Congress is to consider the statutory language itself. *See, e.g., United States v. Hudspeth*, 42 F.3d 1015, 1022 (7th Cir.1994) ("we may turn to the legislative history to interpret a statute only when the statute is ambiguous"), *cert. denied*, —— U.S. ——, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). *See also, e.g., id.* at n. 13 (citing Supreme Court decisions critical of legislative history analysis); *Sundstrand Corp. v. Commissioner of Internal Revenue*, 17 F.3d 965, 967–69 (7th Cir.) (discussing cases critical of legislative history analysis), *cert. denied*, —— U.S. ——, 115 S.Ct. 83, 130 L.Ed.2d 36 (1994); *Matter of Sinclair*, 870 F.2d 1340, 1341–44 (7th Cir. 1989) (same). Because the statutory language is not ambiguous in the context of the

1. The only Circuit to consider the definition of "judicial district or similar legal entity" was the Ninth Circuit in *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir.1994). With no analysis of the statutory language, the court ruled that under the FDCPA, county courts were different venues in Arizona, a state with a unitary superior court where the state has created a formal transfer mechanism between county courts. *Id.* at 1515. Federal district and state courts have employed legislative history analysis

to arrive at different conclusions. *Compare Dutton v. Wolhar*, 809 F.Supp. 1130, 1139 (D.Del. 1992), *aff'd* 5 F.3d 649 (3d Cir.1993) (review of legislative history to conclude county Justice of the Peace Court constituted a "similar legal entity" in a state with no judicial districts), with *Action Professional Service v. Kiggins*, 458 N.W.2d 365, 367 (S.D.1990) (review of legislative history to conclude that FDCPA required filing in state judicial district).

case before us, we do not need to consider the legislative history to determine the meaning of "judicial district or similar legal entity." "As a general rule, when statutory language is plain, there is no cause to examine other indicia of legislative intent." *Orrego v. 833 West Buena Joint Venture*, 943 F.2d 730, 734 (7th Cir.1991) (quoting *Nu-Pulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 550 (7th Cir.1988)).

■ Although the phrase "judicial district or similar legal entity" is not defined in the statute, this does not mean that the phrase is ambiguous. *Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.*, 40 F.3d 146, 152 n. 10 (7th Cir.1994). "Congress is not required to define each and every word in a piece of legislation in order to express clearly its will." *Gardner v. Brown*, 5 F.3d 1456, 1459 (Fed.Cir.1993), *aff'd*, — U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993); *accord, Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085 (7th Cir.1984), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985). Legal terms are understood to employ their common law meaning. It is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." *United States v. Shabani*, — U.S. ——, ——, 115 S.Ct. 382, 384, 130 L.Ed.2d 225 (1994). In so construing, the Supreme Court in *Molzof v. United States*, 502 U.S. 301, 307–308, 112 S.Ct. 711, 715–16, 116 L.Ed.2d 731 (1992), examined the definitions of statutory language contained in legal dictionaries in existence when the statute was drafted and enacted. Congress is presumed to adopt the common legal understanding of the legal terms it employs and the "absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Id.* at 307, 112 S.Ct. at 716 (quoting *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952)).

Black's Law Dictionary provides a plain language definition of the legal term "judicial district":

> One of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority; or the district may include two or more counties, having separate and independent county courts, but in that case they are presided over by the same judge.

Black's Law Dictionary 848 (6th ed. 1990). Earlier editions of Black's employ the same definition, including the 4th edition published in 1951, current when Congress passed the FDCPA in 1977. As our analysis below demonstrates, this definition easily encompasses the Circuit Courts created under the Illinois state constitution but it does not describe the municipal department districts created by the Circuit Court of Cook County.

■ Before turning to this analysis, we note that the FDCPA, a federal statute restricting venue to "judicial districts," limits debt collection actions in state as well as federal courts. The statute includes congressional findings and a declaration of purpose which demonstrate Congress' intent and explicate its authority to regulate debt collection actions filed in state courts. Title 15 U.S.C. § 1692(d) notes that "[e]ven where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce." Having established the commerce power nexus for its regulatory authority, it is obvious that Congress intended for the statute to apply to state as well as federal debt collection lawsuits. This is especially evident in light of the stated purpose, "to eliminate abusive debt collection practices by debt collectors, . . . and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e). Additionally, Congress provided that civil actions pursuant to the federal statute could be filed in any appropriate federal district court, "or in any other court of competent jurisdiction." 15 U.S.C. § 1692k(d). *Cf. Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir.1994);

*Action Professional Service v. Kiggins,* 458 N.W.2d 365 (S.D.1990).

## A. Illinois Judicial Structure

■ The Illinois State Constitution of 1970 establishes and defines the state's judiciary in Article VI. The judicial power is vested in a Supreme Court, an Appellate Court, and Circuit Courts. Ill. Const. art. VI, § 1. Section 2 divides the state into five judicial districts, for the selection of Supreme and Appellate Court Judges. The First Judicial District consists of Cook County, and the remainder of the state is divided into four compact districts of substantially equal population and of contiguous counties. Thus, Illinois has one appellate court divided into five districts rather than five appellate courts. *Renshaw v. General Telephone Co. of Illinois,* 112 Ill.App.3d 58, 67 Ill.Dec. 778, 781, 445 N.E.2d 70, 73 (1983).

■ Article VI, Section 7 provides for the creation of Judicial Circuits.:

(a) The State shall be divided into Judicial Circuits consisting of one or more counties. *The First Judicial District shall constitute a Judicial Circuit.* The Judicial Circuits within the other Judicial Districts shall be as provided by law. . . .

(b) Each Judicial Circuit shall have *one* Circuit Court with such number of Circuit Judges as provided by law. . . .

(c) Circuit Judges in each circuit shall select by secret ballot a Chief Judge from their number to serve at their pleasure. Subject to the authority of the Supreme Court, the Chief Judge shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court.

(Emphasis added.) Thus, each judicial circuit, even when comprised of more than one county, has one Circuit Court presided over by one chief judge. Further, Article VI, § 9 vests "original jurisdiction of all justiciable matters" in the Circuit Courts. The Circuit Courts possess original jurisdiction and when divided into various divisions, as provided for by Article VI, § 7(c), the divisions are not considered jurisdictional, *Board of Trustees*

*of Community College Dist. No. 508 v. Rosewell,* 262 Ill.App.3d 938, 200 Ill.Dec. 74, 90, 635 N.E.2d 413, 429 (1992). Rather, the divisions (designated by the chief judge) are for administrative purposes only. *Djomlija v. Urban,* 107 Ill.App.3d 960, 63 Ill.Dec. 627, 633, 438 N.E.2d 558, 564 (1982). There is no doubt, therefore, that the Illinois Circuit Courts constitute "judicial districts." However Newsom argues that "judicial districts" also defines municipal department districts, thereby requiring that debt collectors file actions in the correct municipal department district. Thus she argues that Friedman should have filed in the municipal department district in which she resides.

## B. Circuit Court of Cook County

General Order 1. of the Procedures and Rules of Court of the Circuit Court of Cook County sets out the organizational structure and operational rules of this very large court system. The Circuit Court is composed of a number of departments, divisions, and districts. The county department has six divisions, the Juvenile Justice and Child Protection Department has two divisions, and the Municipal Department is divided into six districts. In the municipal department, District I comprises the City of Chicago. The other five municipal department districts are divided among the myriad of townships and municipalities that comprise Cook County. General Order 1.2; 2.3(a). General Order 1.2; 2.3(b) describes the civil actions heard by the Municipal Department, including proceedings at law for money not in excess of $30,000, such as the debt collection at issue before us. Section 2.3(c) of General Order 1.2 directs, among other things, that civil actions be filed in (1) the municipal department district of residence of any defendant, or (2) the municipal department district in which the transaction or some part thereof occurred out of which the cause of action arose.

■ To this point, the Rules would appear to reflect a venue requirement governing civil actions filed in the Municipal Department. The reflection dissolves upon examination of the rules governing assignment or transfer of actions. General Order 1.3(a) states, in part:

[A]ny action may be assigned to any judge or associate judge of the Circuit Court of Cook County for hearing or trial, regardless of the department, division or district in which the case was filed or to which the judge is regularly assigned. *Any action or proceeding may be heard or tried in any courtroom in the Circuit Court of Cook County, regardless of the department, district or division in which the case was filed* or for which the courtroom is regularly used.

(Emphasis added.) This rule informs us that whatever convenience the quasi-venue provision might provide exists at the discretion of the administration of the court and that actions will be assigned and transferred within the First Judicial District for the convenience of the administration of the court.

This is emphasized by General Order 1.3(b), which directs that "[n]o action shall be dismissed and no judgment order or decree shall be vacated, set aside or invalidated because the action was filed, tried or adjudicated in the wrong department, division, or district." In addition, General Order 1.3(c) provides for the transfer of actions improperly filed and 1.3(d) for the transfer of actions properly filed upon motion by either party for reasons of convenience or efficiency.

■ Rather than dividing itself into legally distinct judicial districts, the rules governing the administration of the First Judicial Circuit indicate that the Circuit has promulgated administrative rules to facilitate its own administration. The Circuit continues to have one Chief Judge, the Circuit as a whole is the court of original jurisdiction for all of Cook County, and the boundaries between the Municipal Department administrative subdistricts do not set any territorial limits to the subdistrict's authority within the Circuit. Therefore the Municipal Department districts are neither defined as judicial districts, nor under the rules governing their operation do they function as judicial districts. Based upon the structure and function of municipal department districts, we therefore conclude that they do not fit within the definition of "judicial district" as employed by the FDCPA.[2]

■ We have rejected Newsom's contention that a municipal department district constitutes a "judicial district" under the FDCPA. But had Newsom instead argued that municipal department districts constitute "similar legal entities" she also would have failed. While we need not and do not decide what constitutes a "similar legal entity," we do note that the FDCPA employs the disjunctive in limiting venue for debt collection actions. Because the statute directs such actions to "judicial districts *or* similar legal entities," and because we have determined that the Circuit Court for Cook County is a "judicial district" under the statute, Friedman has complied with the restrictions placed upon him by the statute.

## C. Plain Meaning Consistent With Statutory Purpose

■ "The plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted). The plain language analysis of the statute is consistent with its purpose. The FDCPA controls the venue of debt collection actions filed in both federal and in state courts with the purpose of "eliminat[ing] abusive debt collection practices by debt collectors ... and to promot[ing] consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Each of the fifty states has its own judicial system defined by its own constitution. While some state constitutions may chose to divide the judiciary into judicial districts called "districts," others may identify them differently. Illinois, for example, identifies appellate districts as "judicial districts" and its districts of original jurisdiction "circuit

---

**2.** Other indicia of a "judicial district" are also present in the Circuit Courts but not in the Circuit Court of Cook County municipal department districts. For example, residents of Cook County are subject to serve jury duty at any court within the Judicial Circuit, not just in the municipal department district. 705 ILCS 305/1 *et seq.*

courts." Congress passed venue restrictions on debt collection actions that it intended to apply to all federal and state courts. "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction...." 15 U.S.C. § 1692k(d). The purpose of the legislation would be defeated were a debt collector able to ignore the federal statute merely because the specific state in which the collector operated chose to refer to its judicial districts as something other than districts—"circuits," for example. Thus, we find "judicial district or similar legal entity" included in the act.

While "judicial district" possesses a legal definition, "or similar legal entity" does not. On its face it appears Congress intended to include judicial units similar to judicial districts but described in terms other than "judicial district." "Under the principle of *ejusdem generis,* when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk and Western Ry. Co. v. American Train Dispatchers' Ass'n,* 499 U.S. 117, 129, 111 S.Ct. 1156, 1163–64, 113 L.Ed.2d 95 (1991). This principle suggests that the general phrase "or similar legal entity" should be understood with reference to the specific phrase "judicial district" adjoining it in the disjunctive. Similarly, "[t]he maxim *noscitur a sociis,* that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). Both principles compel us to limit "or similar legal entity" to entities similar in structure and function to "judicial districts." In any event, we need not further consider the question having decided that in Illinois, Circuit Courts constitute judicial districts under the plain meaning of the FDCPA.

### III. Conclusion

For the foregoing reasons, the district court is

AFFIRMED.